## WALLACE VS BROWN.

The owner of a slave, hired for a term or period of time, cannot bring an action of replevin for the slave, until after the expiration of such term.

To support replevin there must be shown an actual taking or an actual detention—a constructive detention, by the exercise of acts of ownership respecting the goods, not accompanied by manual possession of the defendant, or his agent, will not suffice.

Where there is a total want of evidence to support the verdict and judgment, this court will award a new trial. (*Russell vs. Cady*, 15 *Ark. Rep.* 552.)

### *Appeal from Crawford Circuit Court.*

The Hon. FELIX J. BATSON, Circuit Judge.

WALKER & GREEN, for appellant.

S. F. CLARK, for appellee.

Mr. Justice HANLY delivered the opinion of the Court.

This was replevin in the *detinet*, for a slave, brought by the appellee against the appellant in the Crawford Circuit Court. Plea, *non-detinet*: verdict and judgment for appellee. Appellant moved for a new trial on the ground of the insufficiency of the proof to sustain the verdict, which was overruled, and he excepted, setting out the following facts:

In the month of May, 1854, appellee bought the slave in controversy from one Bishop, and in the month of November following, he hired her to Bishop for the term of one year. In the month of May, 1855, the same slave was levied upon and offered for sale as the property of Bishop, by the United States Marshal for the Western District, Arkansas, under an execution to him directed, which issued on a judgment obtained by one Taylor, against Bishop, in the District Court of the United States for that District, when the attorney for the plaintiff in the execution, bid her in, in the name of appellant, and proclaimed that he purchased her for him. Appellant was absent from the State at the time, and the purchase was made without his knowledge or consent, and he never obtained possession of the slave. Bishop was in possession of the slave when she was levied upon. Appellee was present at the time of the sale by the Marshal, and forbid it, claiming the slave as his property.

1. To sustain replevin, the plaintiff must, at the time of the *caption*, if in the *cepit*, or the *detention*, if in the *detinet*, have had either the general property in the goods, or a special property in them, coupled with the right to *immediate possession*. See 1 *Chitty's Plead.* 163 ; *Digest, chapter* 136, *section* 1, *page* 842 ; *Beebe vs. DeBaun*, 3 *Eng. Rep.* 510 ; *Britt vs. Aylett*, 6 *Eng. Rep.* 475.

2. If the action be in the *detinet*, the *detention* on the part of the defendant must have been *unlawful*. See 1 *Chitty's Plead.* 162 ; *Digest, chapter* 136, *sections* 1 *and* 5, *page* 842 ; *Beebe vs. DeBaun, ub. sup.*

3. When the action is founded on the wrongful detention of the property, and the original taking is not complained of, the plea of the general issue shall be, that the defendant does not detain the goods and chattels specified in the declaration or any part thereof, in manner and form as therein alleged, and such plea shall put in issue not only the wrongful detention of the chattels, but also the property of the plaintiff therein. See *Digest*, *chapter* 136, *section* 34, *page* 848, 849.

Let us apply the above principles of law to the case before us. 1. Did the appellee prove at the trial, that he had either a *general* or *special* property in the slave sued for, at the commencement of this suit? 2. If he did, did he also prove that he had, at that time, the right to her *immediate possession?* 3. If these questions are answered affirmatively, did appellee prove that the appellant, at the time this suit was brought, *unlawfully detained* the slave in question? If the appellee has failed to establish any one of these three propositions by his proof, it follows, as a necessary legal consequence, that the verdict of the jury was unwarranted by the evidence, and that the court below should have granted the new trial as moved for by appellant.

In response to the first enquiry under this head, the proof shows very conclusively that the appellee, during the month of November, 1854, hired the slave in controversy to one Bishop for the term and period of one year thence next ensuing, so that the term of her hire was not complete and ended when this suit was brought in May, 1855. It is said by the common law, in virtue of this species of bailment, the hirer acquires a special property in the thing during the continuance of the contract, and for the purposes expressed or implied in it. Hence, he may maintain a suit for any tortious dispossession of it, or any injury to it during the existence of his right. See *Story on Bail.*, *sec.* 394, *page* 386. According to this, the general rights of the owner, with respect to the property hired, are suspended during the continuance of the term for which the contract was made; except in such cases only, where the reversionary rights of the bailor may be affected by

the tortious acts of the bailee, or third persons, in which case he may assert his general rights, being absolute by reversion, to protect his reversionary interest. See *Story on Bail.*, *ubi sup. et seq.* And the principles asserted by Judge STORY, in the above citations, are recognized and approved by a direct adjudication of this court in a case involving facts very analogous to those presented in the case we are considering. The case to which we allude is *Britt vs. Aylett*, 6 *Eng. Rep.* 476, 477, in which this court, by JOHNSON, Chief Justice, said : " It is difficult to conceive upon what ground the plaintiff below could claim a recovery. It is in proof, that the defendant below hired the negroes in controversy from the plaintiff for the period of twelve months, which had not expired at the date of the trial. It is clear, therefore, that, even admitting the title to be in the plaintiff, he was not entitled to the immediate possession ; and, consequently, could not legally claim a judgment for such possession." In the case at hand, the hiring of the slave in controversy was not from the appellee to the appellant, as in the case from 6 *Eng.*, but it was to a third person, who has, if there has been a tortious interference with his rights with respect to the property bailed to him, an unquestionable right of action. If, therefore, this action could be maintained at the suit of the appellee, the appellant might be subjected to two actions for the same act without being able to plead a recovery and satisfaction as to one in bar of a recovery as to the other.

Authorities and adjudications might be multiplied and collected upon this point, but we deem the subject so thoroughly settled and at rest, that we will not consume space by farther references. We hold, therefore, that from the evidence stated in the transcript, and in substance detailed above, the appellee had not such property in the slave at the time this suit was commenced as to warrant the verdict in his favor.

In reference to the second inquiry under that head, we think it is clear that there is a total want of proof on the part of the appellee, that he was entitled to the *immediate possession* of the

slave. The proof is manifest, we think, that Bishop was entitled to the possession until after the expiration of the term for which the slave was hired by him.

And as to the third inquiry, as to the *unlawful detention* of the slave by appellant, at the time of the institution of the suit, we think there can be no doubt, from the proof, that the slave had never come into the *actual* possession of the appellant, or his legal agent, before the commencement of this suit. We take the law to be, in such cases, " that in order to support replevin there must be shown an actual *taking* or an actual *detention*, and that a *constructive detention*, by the exercise of acts of ownership respecting the goods, not accompanied by manual possession of the defendant, or his agents, will not suffice." See *Smith's Leading cases* 351, and authorities there collected.

Upon the authority of *Russell vs. Cady*, 15 *Ark. Rep.* 552, and holding, as we have done, that there is a total want of evidence in support of the three propositions lastly above considered, we are constrained to hold that the court below should have sustained the appellant's motion for a new trial, and not having done so, the judgment must be reversed with costs. Let the judgment be reversed.

Absent, Mr. Justice SCOTT.